**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ALLISON DODD; MADELYN AKIN;
LAUREN BELL; MADISON BOWEN;
KATHERINE FISHER; ELLA HOUK; PARKER LYNCH;
LAUREN MCNAMARA; NINA NUGENT;
LAUREN RAMSEY; SADIE ROGERS;
CHARLOTTE THOMPSON;
MOLLY WARNER; KARLEY WOLFGRAM;
and ZOE WUERDEMAN, individually and
on behalf of others similarly situated,**

      **Plaintiffs,**

**v.**                                    **Case No.**  3:26-cv-00183

**MARSHALL UNIVERSITY and MARSHALL
UNIVERSITY BOARD OF GOVERNORS**

      **Defendant.**

## COMPLAINT

1.     Plaintiffs, a group of female student-athletes on Marshall University's swimming and diving team, bring this class action lawsuit against Marshall University and its Board of Governors (together, "Defendants" or "Marshall") for discriminating against female student-athletes and potential student athletes at Marshall University on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"), and by depriving them of equal opportunities to participate.

2.     On February 12, 2026, Marshall informed the female student-athletes on the swimming and diving team that it intended to eliminate their team.

3.     Although blindsided, the Marshall swimmers and divers competed at the 2026 American Athletic Conference Women's Swimming and Diving Championship the following week, bringing home school records—a 1st place in 200 Meter Butterfly, a 2nd place in the 100 Meter Freestyle, a 3rd place in the 200 Meter Individual Medley, a 4th place in the 50 Meter Freestyle, and many other impressive personal and team achievements.[1]

4.     Marshall's intent to eliminate the women's swimming and diving team is entirely consistent with its history of sex discrimination in its intercollegiate athletic program.

5.     Marshall's actions caused harm to Plaintiffs and to those similarly situated, and constitute intentional, prohibited discrimination based on sex in violation of Title IX and its implementing regulation at 34 C.F.R Part 106, which applies to universities—like Marshall—that receive federal funding.

6.     Title IX requires educational institutions receiving federal funds to provide (a) equal opportunities to participate, (b) equal athletic financial aid, and (c) equal treatment in athletics without regard to sex. Marshall receives substantial federal funding, but it fails to provide the required equality to females in its intercollegiate athletic program.

7.     Specifically, Marshall fails to satisfy any of the following measures of compliance with Title IX's mandate to provide equal opportunities to participate to its female student-athletes:

- It fails to provide female student-athletes with athletic opportunities at a rate that is "substantially proportionate" to their undergraduate full-time enrollment rate;

---

[1] HerdZone.com, *McNamara Wins 200 Butterfly on Day Three of American Championship*, available at https://herdzone.com/news/2026/2/20/womens-swimming-and-diving-mcnamara-wins-200-butterfly-on-day-three-of-american-championship (Feb 20, 2026); wchstv.com, *Marshall women's swimmers medal, set records in last meet before program is set to be cut*, Anthony Damcott, available at https://wchstv.com/sports/top-sports/marshall-womens-swimmers-medal-set-records-in-last-meet-before-program-is-set-to-be-cut (Feb 22, 2026).

- It fails to demonstrate a "history and continuing practice of program expansion responsive to the interests and abilities of the sex that has been historically underrepresented" (*i.e.*, females); and

- It fails to show that the interests and abilities of the historically underrepresented sex have been fully and effectively accommodated.

8.     Marshall's plan to eliminate the women's swimming and diving team continues and exacerbates its failure to satisfy these requirements and violates Title IX.

9.     On February 23, 2026, Plaintiffs' counsel sent Defendants a letter raising concerns about the plan to eliminate the women's swimming and diving team, explaining why the elimination of the team would violate Title IX's dictates, and requesting a dialogue about the continuation of the program and voluntary Title IX compliance.

10.     In response, Marshall advised that it intended to proceed with its planned elimination of the team.

11.     Marshall's plan will not result in Title IX compliance. Indeed, it will only exacerbate Marshall's current violations of the law.

12.     In the Fall of 2025, Helen Grant Consulting perform an independent Title IX evaluation (the "outside evaluation").[2]

13.     After this investigation, Helen Grant Consulting concluded that Marshall is out of compliance with Title IX's athletics participation requirements. *See generally* **Exhibit A** ("Grant Report").

14.     The report confirms that Marshall does not have a history and continuing practice of expanding women's participation opportunities.

---

[2] Helen Grant is recognized nationally as a leading expert in Title XI Compliance. *See Helen Grant Consulting*, https://www.helengrantconsulting.com/learn-more-about-helen (last visited March 6, 2026).

15.    And the fact that Marshall now seeks to eliminate a fully rostered and highly competitive women's swimming and diving team means it does not fully and effectively accommodate women's interests and abilities either.

16.    To comply with Title IX, then, Marshall must show substantial proportionality (*i.e.*, that the percentage of women in the athletics program closely approximates the percentage of women in Marshall's undergraduate student body). But Marshall cannot satisfy this standard. Indeed, it does not come close. And the planned elimination only makes matters worse.

17.    Helen Grant Consulting found an average participation gap of 210 between 2023 and 2026. Ex. A at 4. In other words, to reach proportionality, an outside investigation showed Marshall would need to add about 210 more opportunities for female student-athletes.

18.    Even Marshall Athletic Director Gerald Harrison recognized that "Marshall needs to improve the proportionality of women's student athletics to their undergraduate population."[3]

19.    With the Grant Report in hand, Marshall intends to cut the women's swimming and diving team, thereby eliminating 30 more participation opportunities.

20.    Marshall also says it plans to add a women's STUNT team, which can support up to 65 student-athletes.[4] However, that hypothetical future action—which is almost certainly years away from reality (assuming it *ever* becomes a reality)—will not result in substantial proportionality either.

---

[3] Jessica Patterson & Riley McIlmoyle, *Marshall shutters women's swimming, announces new STUNT program*, available at https://www.wowktv.com/sports/marshall-sports/marshall-shutters-womensswimming-announces-new-stunt-program/ (Feb. 17, 2026).
[4] HerdZone.com, *A Message from Marshall University President Brad D. Smith Regarding Marshall Athletics*, available at https://herdzone.com/news/2026/2/17/general-amessage-from-marshall-universitypresident-brad-d-smith-regarding-marshall-athletics (Feb. 17, 2026).

21.     Indeed, if Marshall retained the women's swimming and diving team *and* added a maximum-sized 65-person STUNT team, the school would still be far short of substantial proportionality.

22.     By this lawsuit, Plaintiffs seek to end the historic and ongoing discrimination against female student-athletes at Marshall, create lasting gender equity in Marshall's intercollegiate athletic program, and ensure Marshall's future compliance with Title IX.

## JURISDICTION AND VENUE

23.     This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C.§§ 1681 et seq., and the regulations and policies promulgated pursuant to that law.

24.     This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

25.     Declaratory and other relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 to obtain the correct interpretation of the legal requirements described in this Complaint, which is necessary and appropriate to determine the parties' respective rights and duties.

26.     Venue is proper in the United States District Court for the Southern District of West Virginia, Huntington Division, pursuant to 28 U.S.C. § 1391(b) because Marshall University is in Huntington, West Virginia, which is within this Court's jurisdiction, and all the Defendants reside in West Virginia. In addition, the events giving rise to the Complaint occurred in Huntington, West Virginia, which is within this Court's jurisdiction.

## THE PARTIES

### *Plaintiffs*

#### *Plaintiff Allison Dodd*

27.    Alison Dodd is a junior at Marshall majoring in Exercise Science. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

28.    Ms. Dodd is from Chester, Virginia, and chose to enroll at Marshall because "of the amazing people here. [She] knew from her first phone call with Coach Ian and the second [she] visited campus that Marshall was truly special!"[5]

29.    Marshall's plan to eliminate the women's swimming and diving team has shaken the foundation of Ms. Dodd's college experience. Being a member of the team provided her with development and leadership opportunities that have been the epicenter of her last three years at Marshall. The elimination of the team by Marshall has left her with a distrust of school leaders who claimed they supported women's athletics.

30.    Ms. Dodd can't transfer to another collegiate swimming and diving program because she has built connections here through academics that are crucial to her professional development. Leaving Marshall now would set her back academically and professionally.

#### *Plaintiff Madelyn Akin*

31.    Madelyn Akin is a sophomore at Marshall majoring in Biology. She expects to graduate in 2028. She is a member of Marshall's swimming and diving team.

32.    Ms. Akin hails from Zionsville, Indiana, and chose to enroll at Marshall because "of all the support it had in academics and in athletics."[6]

---

[5]    HerdZone.com, *Allison Dodd*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/allison-dodd/10412 (last visited March 6, 2026).

[6] HerdZone.com, *Maddy Akin*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/maddy-akin/10411 (last visited March 6, 2026).

33.    The elimination of the team has caused significant emotional stress for Ms. Akin because she doesn't know what next year will look like—where she will go to school, where she will live, who her teammates will be, or even if she will be able to continue swimming.

34.    This situation has also affected Ms. Akin physically, academically, and athletically, as the stress made it hard for her to sleep and eat, the recruiting process and visits cause her to miss class and reduce her study time, and the news just days before the team's biggest competition of the year negatively impacted her performance.

*Plaintiff Lauren Bell*

35.    Lauren Bell is a freshman at Marshall. She is a Nursing major. She expects to graduate in 2029. She is a member of Marshall's swimming and diving team.

36.    Ms. Bell is from Latrobe, Pennsylvania.

37.    Ms. Bell's biggest role models are the upperclassmen on Marshall's women's swimming and diving team.[7]

38.    Since the announcement that the team would be eliminated, Ms. Bell has been grieving the potential loss of her team. She has found it difficult to complete schoolwork while also navigating the recruiting process, again, so soon after she arrived at Marshall.

39.    The team has become Ms. Bell's family, and she is extremely sad that it may be taken away.

40.    Marshall is also one of the only universities that allows students to major in nursing while competing in a Division I sport. Ms. Bell will likely have to choose between pursuing a nursing career or continuing to swim in college—a heartbreaking choice.

---

[7] HerdZone.com, *Lauren Bell*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/lauren-bell/10973 (last visited March 6, 2026).

*Plaintiff Madison Bowen*

41.    Madison Bowen is a freshman at Marshall majoring in Elementary Education. She expects to graduate in 2029. She is a member of Marshall's swimming and diving team.

42.    Ms. Bowen is from Emerald Isle, North Carolina.

43.    Thinking she would have many more opportunities to swim with her Marshall team, Ms. Bowen chose to have surgery just two days before being told that Marshall planned to eliminate her team and a week before the conference championship. Ms. Bowen is devastated she was unable to participate in what might be the last competition for the team and herself.

44.     Since the announcement of Marshall's intent to eliminate the team, Ms. Bowen has been focused on doing anything she can to keep the team in place and has therefore found it difficult to focus on her schoolwork or anything else.

45.    She has been struggling to sleep and eat as she has tried to contemplate her future without her team at Marshall. She is physically and mentally exhausted.

*Plaintiff Katherine Fisher*

46.    Katherine Fisher is a junior at Marshall pursuing her Bachelor of Fine Art in Visual Art. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

47.    Ms. Fisher is from Lebanon, Ohio, and chose to enroll at Marshall because "it felt like home. The coaching staff was so kind to [her] and all the girls were so welcoming. Before recruiting opened, [she] didn't even know about Marshall. But the second [her] eyes were opened to it, [she] knew it was where [she] was meant to be."[8]

---

[8] HerdZone.com, *Katie Fisher*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/allison-dodd/10412 (last visited March 6, 2026).

48.     Marshall's plan to eliminate the team took from Ms. Fisher her routine, her purpose, and the family that gave her life structure. Overnight, the goals and identity she had built over the last fifteen years of being a swimmer were gone.

### Plaintiff Ella Houk

49.     Ella Houk is a freshman at Marshall and expects to graduate in 2029. She is a member of Marshall's swimming and diving team.

50.     Ms. Hook is from Kent, Ohio, and chose to enroll at Marshall "for the community and the environment."[9]

### Plaintiff Parker Lynch

51.     Parker Lynch is a junior at Marshall majoring in Nursing. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

52.     Ms. Lynch is from Nashville, Tennessee, and chose to enroll at Marshall because the school had "everything" she was "looking for in academic, athletic, and total collegiate experience."[10]

53.     Marshall's announcement that it planned to eliminate the team just days before the conference championship forced Ms. Lynch, who is recovering from hip surgery, to make a difficult decision to compete at what might be the last Marshall women's swimming and diving competition.

54.     In addition, the threatened elimination has made it hard for Ms. Lynch to focus on her schoolwork, which is especially intense given her major.

---

[9] HerdZone.com, *Ella Houk*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/ella-houk/10977 (last visited March 6, 2026).
[10]    HerdZone.com, *Parker Lynch*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/parker-lynch/10417 (last visited March 6, 2026).

55.     Ms. Lynch chose Marhsall because they were totally supportive of her ambition to both compete at the Division I level and graduate with a Nursing degree.

56.     If the team is eliminated, Ms. Lynch will no longer be able to swim in a collegiate program because her nursing credits would not transfer to a new university.

*Plaintiff Lauren McNamara*

57.     Lauren McNamara is a sophomore at Marshall majoring in Secondary Education. She expects to graduate in 2028. She is a member of Marshall's swimming and diving team.

58.     Ms. McNamara is from Flatrock, Michigan, and chose to enroll at Marshall "due to the close-knit family feel [she] noticed on [her] recruiting visit."[11] She chose "Marshall because it felt like home." *Id.*

59.     The plan to eliminate the women's swimming and diving team has changed Ms. McNamara's life as a student, as an athlete, as a sister, as a daughter, and as a friend. With very little time to weigh her options with other swimming and diving programs, she must now go out and try to find a new home and a new family if she wants to keep swimming. These efforts have left her physically and emotionally exhausted.

60.     In addition, Ms. McNamara must make the difficult decision in the next week whether to accept an offer to transfer to a new program.

*Plaintiff Nina Nugent*

61.     Nina Nugent is a junior at Marshall. She is majoring in Biomedical Engineering. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

---

[11]  HerdZone.com, *Lauren McNamara*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/lauren-mcnamara/10419 (last visited March 6, 2026).

62.    Ms. Nugent is from Wake Forest, North Carolina, and chose to enroll at Marshall because "of the community [she] saw, not only with the girls on the swim team, but with the whole school."[12]

63.    Since hearing that Marshall intends to eliminate her team, Ms. Nugent has found it hard to focus on schoolwork. Coming to the realization that she may never swim at the collegiate level again has been difficult for her.

64.    Ms. Nugent is unable to transfer to another program given the rigors and requirements of her major.

*Plaintiff Lauren Ramsey*

65.    Lauren Ramsey is a junior at Marshall studying nursing. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

66.    Ms. Ramsey is from Birdsboro, Pennsylvania, and chose to enroll at Marshall because of "the amazing academics, team atmosphere, coaching staff, and flexibility that will allow [her] to succeed in both the pool and in the classroom."[13]

67.    Marshall's plan to eliminate the team has devastated Ms. Ramsey. When she committed to Marshall, she was promised the opportunity to pursue both her nursing degree as well as swim for four years in a Division I program. If the team at Marshall is eliminated, Ms. Ramsey will no longer be a collegiate varsity swimmer as she can't transfer without having to start over academically.

---

[12] HerdZone.com, *Nina Nugent*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/nina-nugent/10420 (last visited March 6, 2026).
[13]    HerdZone.com, *Lauren Ramsey*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/lauren-ramsey/10421 (last visited March 6, 2026).

68.    In addition, the team at Marshall has been Ms. Ramsey's second family. Having that family taken away with no warning and no transparency has been extremely hard for her to process.

*Plaintiff Sadie Rogers*

69.    Sadie Rogers is a freshman at Marshall majoring in International Business. She expects to graduate in 2029. She is a member of Marshall's swimming and diving team.

70.    Ms. Rogers is from Rochester, Michigan, and chose to enroll at Marshall because of the community.[14]

71.    Marshall's decision to eliminate the women's swimming and diving team has made Ms. Rogers feel that she no longer has value as a student or as an athlete. The decision has made her worry about her future and that something like the sudden elimination of her team could happen again with a different program.

72.    Ms. Rogers is in the Marshall honors program and had planned to join the accelerated master's program, which she would not be able to do at a new school due to issues with transferring credits.

73.    She now must decide between the academic path she built for herself at Marshall or leaving to continue her athletic career. It is not a decision she ever thought she would have to make.

*Plaintiff Charlotte Thompson*

74.    Charlotte Thompson is a junior at Marshall studying Nursing. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

---

[14]    HerdZone.com, *Sadie Rogers*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/sadie-rogers/10971 (last visited March 6, 2026).

75.     Ms. Thompson is from Dacula, Georgia, and chose Marshall because "[t]he team was so welcoming and the atmosphere of the school and the nursing program felt like home."[15]

76.     When Ms. Thompson was recruited by Marshall as a junior in high school, she was promised the opportunity to pursue both the chance to swim in a Division I program while earning a Bachelor of Science in Nursing, a very specific and rare combination. She chose to move far from home, and the women's swimming and diving team has become her family. To have that family taken away is devastating.

77.     If the team is eliminated, Ms. Thompson will no longer be able to swim in a collegiate program because her nursing credits would not transfer to a new university.

*Plaintiff Molly Warner*

78.     Molly Warner is a junior at Marshall majoring in Biology. She expects to graduate in 2027. She is a member of Marshall's swimming and diving team.

79.     Ms. Warner is from Shelby Township, Michigan.

80.     Since Marshall announced its decision to eliminate the women's swimming and diving team, Ms. Warner has found it hard to focus on anything but the negative consequences of that decision. It has caused extreme stress and emotional turmoil.

81.     In addition, Ms. Warner must make the difficult decision in the next week whether to accept an offer to transfer to a new program.

*Plaintiff Karley Wolfgram*

82.     Karley Wolfgram is a freshman at Marshall majoring in Exercise Science. She expects to graduate in 2029. She is a member of Marshall's swimming and diving team.

---

[15] HerdZone.com, *Charlotte Thompson*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/charlotte-thompson/10424 (last visited March 6, 2026).

83.     Ms. Wolfgram is from Lenoir City, Tennessee, and chose to enroll at Marshall "because of how welcoming the [swimming and diving] team was."[16]

84.     Marshall's plan to eliminate that team has put extreme emotional stress on Ms. Wolfgram. Completing schoolwork and keeping her grades up during this time is extremely difficult, especially while trying to pursue swimming opportunities at another school.

85.     Ms. Wolfgram planned to stay at Marshall for four years with her best friends. Now the elimination of the team has given her a great deal of uncertainty and stress about her future. Moving to a new school and a new team will be very difficult for Ms. Wolfgram, who had finally settled in at Marshall and loves it.

*Plaintiff Zoe Wuerdeman*

86.     Zoe Wuerdeman is a freshman at Marshall and is expected to graduate in 2029. She is a member of Marshall's swimming and diving team.

87.     Ms. Wuerdeman is from Cincinnati, Ohio and chose to enroll at Marshall because of the "environment and the spirit of community."[17]

**Defendants**

88.     Defendant Marshall University is a recipient of federal funds and is required to comply with Title IX and all implementing regulations.

89.     Defendant Marshall University holds itself out as a university committed to providing top-quality intercollegiate sports programs. The university uses this distinction as part of its efforts to recruit top student-athletes and coaching staff.

---

[16]    HerdZone.com, *Karley Wolfram*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/karley-wolfgram/10972 (last visited March 6, 2026).
[17]    HerdZone.com, *Zoe Wuerdeman*, available at https://herdzone.com/sports/womens-swimming-and-diving/roster/zoe-wuerdeman/10965 (last visited March 6, 2026).

90.     Defendant Marshall University Board of Governors (the "Board") is a sixteen-member body responsible for adopting regulations and policies governing the university.

91.      The Board has authority over educational planning, financial decisions, campus planning, and the school's athletics programs, including what sports are offered, what aid and other benefits student-athletes are provided, and how those student-athletes are treated.

92.     Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and the regulations adopted pursuant to 34 C.F.R Part 106, Defendants Marshall and the Board must provide equality of opportunity for women and men in every program Marshall offers, including equal opportunities for male and female athletes in the intercollegiate sports programs.

## FACTUAL ALLEGATIONS

### The Women's Swimming and Diving Team

93.     On Thursday, February 12, 2026, the women's swimming and diving team held their regularly scheduled morning practice and prepared for the American Athletic Conference Championships taking place the following week.

94.     Later that day, team members received a message from their coach about a mandatory meeting to occur that day at 2:00 PM. The women had approximately two hours' notice to rearrange their schedules—some athletes were forced to miss classes or doctor's appointments—to attend the meeting.

95.     In a meeting lasting approximately two-and-a-half *minutes* in total, Athletic Director Gerald J. Harrison informed the athletes that Marshall intended to eliminate their team.

96.     Director Harrison told the athletes that out of the "cuttable" women's sports at Marshall, swimming and diving was the most expensive. He did not explain what, in his view, made women's sports "cuttable."

97.    Marshall had informed the team's head coach, Ian Walsh, of its intent to cut the women's swimming and diving team on the evening of February 11, 2026.

98.    Marshall had informed its student body president two days earlier.

99.    Marshall scheduled a compliance meeting for February 13, 2026, allegedly to inform the student-athletes of their options and to teach them about the transfer portal.

100.    At the compliance meeting, Marshall advised the student-athletes to put their names in the portal—saying: "just do it to be safe."

101.    During the compliance meeting, a Marshall representative stated that the school would remain in compliance with Title IX obligations while simultaneously admitting that the school does not currently comply with any prong of the applicable Three-Part Test.

102.    On February 17, 2026, during the conference championships, Marshall's President Brad D. Smith issued a public statement regarding the school's plan to eliminate the women's swimming and diving team.

103.    The impact of Defendants' decision has been immediate and detrimental to the student-athletes and to the coaches and staff members associated with the team.

104.    The elimination of the women's swimming and diving team was not only surprising and devastating to the athletes on those teams, but it was also a clear violation of federal law.

105.    Title IX prohibits Marshall from engaging in sex-based discrimination, including in its athletics program.

106.    As applied to Marshall, Title IX says that "intercollegiate level participation opportunities for male and female students" must be "provided in numbers substantially proportionate to their respective enrollments." 44 Fed. Reg. 71418 (Jan. 16, 1996).

107.    As interpreted by the OCR, this means that, if a university has a full-time undergraduate population that is 60% female and 40% male, the school's varsity athletics program should ideally be 60% female and 40% male. Minor differences from true proportionality will not matter, because, among other things, enrollment numbers and team sizes will reasonably vary from year to year. The key question is whether the number of opportunities required to fill the gap would be "sufficient to sustain a viable team, *i.e.,* a team for which there is a sufficient number of interested and able students and enough available competition to sustain an intercollegiate team." Office of Civil Rights, U.S. DOE, *Clarification of Intercollegiate Athletics Policy Guidance: the Three-Part Test* at 3 (Jan. 15, 1996) ("1996 OCR Clarification"). If the gap is smaller than such a team, the numbers are "substantially proportionate." Not so if the gap is larger.

108.    At Marshall, as discussed below, the intercollegiate level participation opportunities for male and female students have not been provided in numbers substantially proportionate to their respective enrollment for years—and the picture is only worse with the elimination of the women's swimming and diving team. The gap created by cutting this team will necessarily "be sufficient to sustain a viable team, *i.e.*, a team for which there is a sufficient number of interested and able students and enough available competition to sustain an intercollegiate team"—namely, the women's swimming and diving team.

109.    Thus, the elimination of the women's swimming and diving team violates Title IX.

110.    In addition to this most recent and obvious violation of Title IX, Defendants have historically discriminated and continue to discriminate against women student-athletes and potential student-athletes at Marshall on the basis of their sex by depriving them of equal opportunities to participate in Marshall's intercollegiate athletic program.

111.    Marshall has been significantly out of compliance with this participation requirement for years.

112.    These realities conclusively demonstrate that Marshall cannot satisfy either of the alternative paths to Title IX compliance set forth by the United States Department of Education's Office for Civil Rights ("OCR") (*i.e.,* a history and pattern of program expansion that meets women's interest or full and effective accommodation by the present program).

113.    In particular, Marshall does not have a history of expanding opportunities for women. Instead, female participation in its athletics program has been stagnant for a decade. And Marshall has not added a women's team in over two decades.

114.    In addition, because it now plans to eliminate a fully rostered women's team, Marshall does not have a continuing practice of program expansion here.

115.    For similar reasons, particularly with the planned elimination of a fully rostered and highly competitive women's swimming and diving team, Marshall does not fully and effectively accommodate the interests and abilities of women.

### Title IX Requirements

116.    Marshall is a member of the NCAA, and the women's swimming and diving team competes in the American Athletic Conference ("AAC"). Marshall participates in Division I athletics, the highest level of intercollegiate competition.

117.    At the beginning of the 2025-2026 academic year, Marshall sponsored men's baseball, basketball, cross country, football, golf, soccer, and track & field. During the same period, Marshall sponsored women's basketball, cross country, golf, soccer, softball, swimming & diving, tennis, track & field, and volleyball. Each of these sports is segregated based on sex.

118.    Because Marshall receives federal financial assistance, its athletic program is subject to Title IX, and Marshall must comply with Title IX's requirements. 20 U.S.C. § 1687.

119.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

120.    Applying Title IX to intercollegiate athletics, OCR has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R § 106.41(c).

121.    The United States Department of Education ("DOE") later adopted these regulations and codified them at 34 C.F.R. Part 106 (collectively, the "Regulations"). These regulations are enforced by OCR.

122.    In 1979, OCR issued a policy interpretation of Title IX and the Regulations as applied to intercollegiate athletics at 44 Fed. Reg. at 71418 (the "OCR Policy Interpretation").

123.    The OCR Policy Interpretation sets forth three areas of compliance under Title IX as it relates to college sports: (1) effective accommodation of student interests and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits for athletic teams.

124.    Violation of the requirements of Title IX constitutes intentional sex discrimination.

125.    As particularly relevant here, the elimination of the women's swimming and dive team, knowing the team is made up only of women, is intentional sex discrimination that violates Title IX unless Marshall can demonstrate that it will provide women "substantially proportionate" participation opportunities after the cuts become effective. *See, e.g.*, *Mayerova v. E. Michigan Univ.*, 346 F. Supp. 3d 983, 986 (E.D. Mich. 2018).

126.    Marshall fails the first area of compliance because it fails to provide effective accommodation of student interests and abilities for its female student-athletes, and it will not provide women "substantially proportionate" participation opportunities after the team is cut—not even if it adds a fully rostered STUNT team.

**Marshall fails to accommodate female student-athletes' interests and abilities.**

127.    The OCR Policy Interpretation established three different ways to measure whether Marshall effectively accommodates female athletes' interest and abilities. One of the following three parts must be satisfied for Marshall to be in compliance:

(1)    Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or

(2)    Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

(3)    Where the members of one sex are underrepresented amount intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Federal Register 71,413 a 71,418 (1979) (the "Three-Part Test").

128.    Every federal court of appeals that has considered the three-part test's validity has upheld it. *See e.g., Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 961 (9th Cir. 2010); *Equity in Athletics v. Dep't of Educ*., 504 F. Supp. 88, 102-05 (W.D. Va. 2007), *aff'd* 291 2008 WL 4104235 (4th Cir. 2008); *see also McCormick v. School Dist. Mamaroneck*, 370 F.3d 273, 288 (2d Cir. 2004); *Chalenor v. Univ. of N.D*., 292 F.3d 1042, 1046-47 (8th Cir. 2002).

129.    Marshall cannot comply with any part of the Three-Part Test. Nor can it show that its sex-segregated athletics program offers women equal opportunities to participate. Accordingly, Marshall is violating Title IX.

130.    Notably, Marshall's outside evaluation in the fall of 2025 concluded that Marshall does not currently meet any prong of the Three-Part Test.

131.    First, it concluded that Marshall fails to provide "intercollegiate level participation opportunities for male and female students in numbers substantially proportionate to their respective enrollments." Ex. A at 5.

132.    The outside evaluation reviewed the past three academic years of participation data, the results of which are summarized in the following table:

| TABLE 1 | THREE-YEAR TEST 1 – PROPORTIONALITY CALCULATIONS | | | | | |
|---|---|---|---|---|---|---|
| FT UG Enrollment | AY 2023-24 | | AY 2024-25 | | AY 2025-26 | |
| Men | 2,718 | 43.0% | 2,881 | 44.1% | 3,124 | 43.0% |
| Women | 3,599 | 57.0% | 3,658 | 55.9% | 4,137 | 57.0% |
| TOTALS | 6,317 | 100% | 6,539 | 100% | 7,261 | 100% |
| Athletic Participation | | | | | | |
| Men | 354 | 59.4% | 354 | 61.1% | 297 | 56.4% |
| Women | 242 | 40.6% | 225 | 38.9% | 230 | 43.6% |
| TOTALS | 596 | 100% | 579 | 100% | 527 | 100% |
| % Difference (Favoring) | 16.4% | (Men) | 17.1% | (Men) | 13.3% | (Men) |
| Participation Opportunities | 225+ | | 250+ | | 160+ | |

*Id.*

133.    This table reveals significant participation gaps, which will only be made larger by the planned elimination of the women's swimming and diving team.

134.    Marshall's history of a significant participation gap extends back to at least 2014.

135.    The numbers provided by Marshall as part of the Equity in Athletics Disclosure Act ("EADA") from 2014-24, which are summarized in the following chart and which are publicly available from the Department of Education's website, reveal a steadily worsening female participation gap (*i.e.*, the number of women Marshall would need to add to the athletics program to reach proportionality).

| Year | Undergraduate Student Body | | | | | Athletics Program | | | | | | Gap |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Males | Male % | Females | Female % | Total | Male Athletes | Male % | Female Athletes | Female % | Total | | |
| 2014-15 | 3,535 | 43.90% | 4,517 | 56.10% | 8,052 | 201 | 48.43% | 214 | 51.57% | 415 | | 43 |
| 2015-16 | 3,442 | 43.39% | 4,491 | 56.61% | 7,933 | 215 | 48.53% | 228 | 51.47% | 443 | | 53 |
| 2016-17 | 3,454 | 43.63% | 4,463 | 56.37% | 7,917 | 226 | 48.39% | 241 | 51.61% | 467 | | 51 |
| 2017-18 | 3,357 | 43.19% | 4,416 | 56.81% | 7,773 | 217 | 47.28% | 242 | 52.72% | 459 | | 43 |
| 2018-19 | 3,179 | 43.02% | 4,211 | 56.98% | 7,390 | 219 | 50.81% | 212 | 49.19% | 431 | | 78 |
| 2019-20 | 3,026 | 43.05% | 4,003 | 56.95% | 7,029 | 236 | 52.21% | 216 | 47.79% | 452 | | 96 |
| 2020-21 | 2,940 | 42.20% | 4,027 | 57.80% | 6,967 | 273 | 50.37% | 269 | 49.63% | 542 | | 105 |
| 2021-22 | 2,716 | 41.64% | 3,806 | 58.36% | 6,522 | 252 | 50.81% | 244 | 49.19% | 496 | | 109 |
| 2022-23 | 2,679 | 42.50% | 3,625 | 57.50% | 6,304 | 293 | 55.39% | 236 | 44.61% | 529 | | 160 |
| 2023-24 | 2,789 | 42.66% | 3,749 | 57.34% | 6,538 | 364 | 60.36% | 239 | 39.64% | 603 | | 250 |

136.    As these charts make clear, Marshall's undergraduate population has remained remarkably consistent for the past ten years, always hovering around 57% female and 43% male. Over that same period, Marshall's men's teams have grown substantially—from a low of 201 student athletes in 2014-15 to a high of 364 student-athletes in 2023-24. Women's teams, meanwhile, have largely stayed the same, averaging about 234 student-athletes each year.

137.    The highlighted columns entitled "participation opportunities" in the outside evaluation and "gap" in the EADA chart represent the number of female student-athletes Marshall would have needed to add, in a given year, to reach proportionality. Since 2014, that figure was *never* smaller than 43. The figure has exceeded 75 for the most recent eight years, and it has exceeded 100 for six consecutive years, culminating in monstrous gaps of at least 225+ in 2023-2024, 250+ in 2024-2025, and 160+ in 2025-2026.

138.    As the numbers clearly demonstrate, Marshall's plan to cut the women's swimming and diving team will constitute a flagrant violation of Title IX.

139.    The second part of the Three-Part Test asks whether the institution can show a history and continuing practice of program expansion.

140.    Marshall cannot.

141.    In fact, the elimination of the women's swimming and diving team, without more, precludes Marshall from satisfying part two of the Three-Part Test.

142.    In addition, Marshall previously eliminated women's teams, including the Badminton and Field Hockey teams in the early 1970's and women's golf in 1983 (reinstated 2002).

143.    Moreover, Marshall has not added a women's sport since 2002, when it added women's swimming and diving.

144.    And Marshall's female participation figures (as shown in the EADA charts) have been stagnant for the past decade.

145.    Further, Marshall has no concrete plans, with a date certain, to add a women's sport.

146.    Non-specific promises to add a STUNT team at some time in the next two years do not satisfy this prong. In fact, even concrete plans with a date certain would not constitute a history or continuing practice of program expansion for women.

147.    The final part of the Three-Part Test asks whether Marshall's current athletics program fully and effectively accommodates women's interests and abilities.

148.    Because it intends to cut the women's swimming and diving team, Marshall cannot prevail on this prong. *See Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 294 (D. Conn. 2009) ("There is no question that, if Quinnipiac fails to meet prong one of Title IX compliance, it will be

out of compliance with Title IX. That is because, by eliminating a women's team while there is sufficient interest to field one, the University will have failed to demonstrate that it is committed to expanding opportunities for the underrepresented gender—women—or that it has fully and effectively accommodated the interests and abilities of that underrepresented gender.").

## INJUNCTIVE RELIEF

149.    Plaintiffs are entitled to immediate injunctive relief that requires Defendants to forego its plan to eliminate any women's sport, including the women's swimming and diving team.

150.    Failure to grant the requested injunctive relief will cause irreparable harm to the Plaintiffs by allowing Defendants' discrimination against them to persist and by forever denying them an equal opportunity to participate in varsity intercollegiate athletics at Marshall.

151.    If Defendants are not restrained from eliminating women's sports, including women's swimming and diving, Plaintiffs will never again have the opportunity to participate in this valuable experience at Marshall—one that provides academic, physical, psychological, social, and even economic benefits.

152.    In addition, when the transfer portal is fully open on March 11, 2026, some members of the swimming and diving team will have to make decisions to stay at Marshall or go to a new swimming and diving program. Losing these members of the team will devastate the swimming and diving program at Marshall.

153.    There is no adequate remedy at law for this harm.

154.    If the Court were to act quickly, the athletes on the women's swimming and diving team could stay with the Marshall program.

155.    Similarly, the coaches and staff would be able to work with the athletes during this academic year and prepare for the 2026-27 season, including by recruiting, budgeting, scheduling competition for the season, and ensuring proper facilities are available.

156.    As more time passes, it becomes increasingly difficult—if not impossible—for the teams and athletes to train and prepare adequately for the next season.

157.    The continuing, irreparable harm caused by Defendants' discriminatory actions far outweighs any possible harm that granting the injunctive relief might cause Defendants.

158.    Preliminarily enjoining Defendants' elimination of women's sports, including the varsity women's swimming and diving team, would merely ensure continuation of the status quo during this litigation.

159.    Defendants will suffer no harm by continuing its current slate of women's sports, including the women's varsity swimming and diving team, other than the monetary cost of those teams, which Marshall has already borne for many years.

160.    The lifelong harm caused to Plaintiffs by Defendants' discrimination is irreparable and can never be adequately compensated with money. This harm far outweighs any monetary cost incurred by Defendants to continue its current offering of women's sports.

161.    Importantly, Defendants could choose to allocate Marshall's budget and athletic opportunities more equitably merely by shifting Marshall's longstanding favoritism toward men to a more equal allocation between men and women.

162.    The injunctive relief that Plaintiffs request will promote the public interest by increasing educational opportunities for female students, ending sex discrimination against female student-athletes and potential student-athletes in Marshall's intercollegiate athletic program, and requiring the Defendants to comply with federal law.

163.    Congress decided that ending such discrimination is in the public interest when it enacted Title IX. It has reaffirmed that public interest over the past fifty years by defeating every attempt to weaken Title IX. Equal opportunity for all students—male and female—is at the core of this case, is at the core of American values, and is clearly in the public interest.

## CLASS ALLEGATIONS

164.    Plaintiffs bring this action on behalf of themselves and a class of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

165.    Plaintiffs seek to represent a class of all present and future women students and potential students at Marshall who participate, seek to participate, and/or are deterred from participating in the intercollegiate athletics at Marshall.

166.    Each of the named Plaintiffs is a member of the proposed class and has been injured by the Defendants' sex discrimination in Marshall's varsity athletics program. The announced plan to eliminate Marshall's women's swimming and diving team exacerbates the discrimination by eliminating female athletic participation opportunities at Marshall.

167.    The proposed class meets the "numerosity" requirement of Federal Rule of Civil Procedure 23(a)(1) because there are approximately 230 female student-athletes at Marshall and joinder of all of them is impracticable.

168.    The proposed class also meets those requirements because joinder of all class members and all persons harmed by Defendants' ongoing sex discrimination in Marshall's varsity intercollegiate athletic program is not just impracticable, but impossible.

169.    The proposed class is known to exist, but the members of the class will change during this litigation because of the nature of college enrollment and athletic participation. Students at Marshall generally aim to graduate four years after they matriculate. Athletes are

eligible to participate in their sport for only four years, according to the rules of the NCAA. Accordingly, the members of the class harmed by Defendants' discrimination will change as each outgoing class of students graduates and another incoming class of students enrolls at Marshall.

170.    Not all members of the plaintiff class are currently identifiable because the class includes prospective and future students who will enroll at Marshall during this litigation or who will be deterred from enrolling at Marshall because of Defendants' failure to provide athletic participation opportunities for female student-athletes, including the sports in which they want to participate.

171.    Not all members of the plaintiff class are currently identifiable because the class includes not only swimmers and divers, but also all present, prospective, and future female students who want to participate in other varsity intercollegiate sports that are not offered at Marshall.

172.    Plaintiffs are not aware of Marshall having surveyed its present or prospective student body to assess athletic interests and abilities.

173.    Moreover, because Marshall recruits high school and transfer students from around the world, Marshall could increase and thus realize athletic participation opportunities for female students by starting virtually any new women's varsity sports team and then recruiting women to enroll and participate.

174.    It is unknown how many present, prospective, or future female student-athletes would enroll at Marshall or would participate in athletics at the university if it stopped discriminating against women. The hundreds of additional student-athletes who might apply, be recruited, or participate in Marshall's varsity intercollegiate athletic program if Defendants added the necessary athletic opportunities to provide equal opportunities for women are too numerous to make joinder practicable.

175.    Joinder is impracticable because the class includes members whose identities are not currently known. There are female students at Marshall whose names are currently unknown, but who would participate in varsity athletics at Marshall if Defendants did not intentionally discriminate in the operation of its athletic program or if Defendants offered the sports or events in which they want to participate.

176.    Joinder is impracticable because the class includes unknown and unidentifiable perspective and future students who will enroll at Marshall during this litigation or who will be deterred from enrolling at Marshall because of the sex discrimination in the school's varsity intercollegiate athletic program.

177.    Plaintiffs satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2) because they share questions of law and fact in common with the proposed class, particularly whether Defendants are violating Title IX by failing to provide female student-athletes with equal opportunities to participate in varsity intercollegiate athletics.

178.    Because Title IX requires comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

179.    Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. They all have been denied, are continuing to be denied, or will be denied equal opportunities to participate in varsity intercollegiate athletics, equal athletic financial aid, and equal treatment at Marshall because of Defendants' ongoing sex discrimination.

180.    Plaintiffs want the Court to prohibit Defendants from eliminating women's varsity intercollegiate athletic opportunities at Marshall and to require Defendants to preserve all women's teams, including the women's swimming and diving team, and to comply with Title IX.

181.    Plaintiffs are members of the proposed class and will fairly and adequately represent the interests of the class pursuant to Federal Rule of Civil Procedure 23(a)(4). They intend to prosecute this action vigorously to secure fair and adequate injunctive relief for the entire class and have retained counsel with significant experience and success prosecuting Title IX class actions against universities.

182.    Plaintiffs satisfy the requirement that class certification would be superior to other methods available for the fair and efficient adjudication of the controversy required by Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class—denying female student-athletes at Marshall equal opportunities to participate in varsity intercollegiate athletics, including, but not limited to, women's swimming and diving—thereby making final declaratory and injunctive relief appropriate with respect to the class as a whole.

183.    Undersigned counsel have devoted substantial time to identifying and investigating the potential claims in this action, have developed detailed knowledge of the facts and the applicable law, and have sufficient resources to commit to representing this putative class as interim counsel under Federal Rule of Civil Procedure 23(g)(3) until such time as this Court determines whether to certify the action as a class action.

## COUNT I

### Title IX

### Unequal Allocation of Athletic Participation Opportunities
### By the Plaintiffs and Plaintiff Class

184.    Plaintiffs re-allege and incorporate by reference paragraphs 1-183.

185.    The Plaintiffs bring this claim as a class action as set forth in the Class Allegations.

186.    Defendants determine the number of athletic participation opportunities that Marshall will provide to male and female students by choosing which sports it will offer to each sex and by deciding how many athletes Marshall will allow to participate on each sports team.

187.    Defendants fail to provide female students an equal opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R §106.41(c)(1).

188.    Defendants fail to comply with each part of the Three-Part Test, described above, and fail to demonstrate compliance with the requirements of Title IX.

189.    Defendants do not provide female students with varsity intercollegiate athletic participation opportunities in a number substantially proportionate to female undergraduate enrollment.

190.    Defendants intend to eliminate a fully rostered and highly competitive varsity team that had female participants with the interest and ability to play.

191.    Defendants cannot show a history or continuing practice of program expansion for women. Instead, by eliminating the women's swimming and diving team, the Defendants move further out of compliance.

192.    Plaintiffs have the interest and ability to participate in women's varsity swimming and diving. High school students (the source of most of Defendants' incoming, prospective, and future students) also have the interest and ability to participate in swimming and diving. Competition exists in swimming and diving because it is a major NCAA sport and Marshall has offered the sport for over two decades—as have other schools in the NCAA.

193.    Defendants will continue and exacerbate their existing pattern and practice of sex discrimination in the allocation of athletic participation opportunities at Marshall if they are not

restrained from eliminating female athletic participation opportunities, including by eliminating the women's varsity swimming and diving team.

194.    Plaintiffs seek a declaration that Defendants engaged in discrimination on the basis of sex by failing to offer female students an equal opportunity to participate in intercollegiate athletics at Marshall.

195.    Plaintiffs seek expedited preliminary and permanent injunctive relief requiring Defendants to stop discriminating in the operation of Marshall's intercollegiate athletics program and to maintain all currently offered women's sports, including women's swimming and diving.

196.    As a result of Defendants' discriminatory actions, Plaintiffs have been denied and/or imminently will be denied their civil right to receive equal opportunities to participate in varsity intercollegiate athletics free of sex discrimination.

197.    They have been denied the educational, economic, physical, and psychological, and social benefits of athletic participation.

198.    If Defendants are not restrained from eliminating women's sports, including the women's swimming and diving team, these athletes will forever lose the opportunity to participate in intercollegiate sports at Marshall—an opportunity that lasts only four years, but that provides a lifetime of educational, economic, physical, psychological, and social benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.    Certify this case as a class action on behalf of all present and future female students and potential students at Marshall who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics at Marshall; appoint Plaintiffs as class representatives; and appoint Plaintiffs' counsel as class counsel;

B.     Enter an order declaring Defendants have engaged in a past and continuing pattern and practice of discrimination against female students on the basis of sex in the operation of Marshall's varsity intercollegiate athletics program, in violation of Title IX and the regulations promulgated thereunder;

C.     Issue a temporary restraining order barring Defendants from discriminating against female students on the basis of sex in Marshall's varsity intercollegiate athletics program and prohibiting Defendants from eliminating any women's sport, including the women's swimming and diving team, unless and until Marshall is and will be in compliance with Title IX;

D.     Issue preliminary and permanent injunctions barring Defendants from discriminating against female students on the basis of sex in Marshall's varsity intercollegiate athletics program and prohibiting Defendants from eliminating any women's sport, including the women's swimming and diving team, unless and until Marshall is and will be in compliance with Title IX;

E.     Maintain jurisdiction over this action to monitor Defendants' compliance with this Court's orders;

F.     Award Plaintiffs compensatory damages;

G.     Award Plaintiffs their reasonable attorneys' fees and expenses; and

H.     Order such other and further relief as the Court deems appropriate.


Dated: March 9, 2026                    Respectfully submitted,

                                        /s/Nicholas S. Johnson
                                        Nicholas S. Johnson (WV Bar No. 10272)
                                        Cary Joshi (*pro hac vice* forthcoming)
                                        Josh I. Hammack (*pro hac vice* forthcoming)
                                        Savanna Jones (WV Bar No. 14565)
                                        **BAILEY & GLASSER LLP**

1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
202.463.2101
202.463.2103 fax
njohnson@baileyglasser.com
cjoshi@baileyglasser.com
jhammack@baileyglasser.com
sjones@baileyglasser.com

E. Gabrielle Marcum (WV Bar No. 13902)
**BAILEY & GLASSER LLP**
94 Long Street, Suite 200
Westover, WV 26501
304.594.0087
304.594.9709 fax

*Attorneys for Plaintiffs*